IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:03-CV-2321-D |
| VS. | § | |
| | § | |
| CHARLES I. WILLIAMS, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION</u>

In this suit by plaintiff United States of America ("the government") against defendant Charles I. Williams, D.D.S. ("Dr. Williams") to recover on a debt, the question presented is whether Dr. Williams proved the affirmative defense that his liability to the United States Department of Agriculture ("USDA") was discharged in bankruptcy. The parties tried this case to the court in a bench trial. For the reasons that follow,[1] the court finds and concludes that Dr. Williams proved that his liability to USDA was discharged. Accordingly, the court dismisses with prejudice the government's action against him.

I

The government sues Dr. Williams under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, and the common law, contending he is liable for $224,315.93 plus interest accrued after June 1, 2005 for a debt arising out of his participation as

---

[1]The court sets out in this memorandum opinion and order its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a).

a general partner in Hillside Apartments Partnership ("Partnership").  On October 22, 1975 the Partnership executed a promissory note, loan agreement, security agreement, and deed of trust with the Farmers Home Administration ("FmHA") of USDA for a loan in the amount of $327,500.  The proceeds of the loan were used to build the Hillside Apartments ("Hillside"), an apartment complex located in Mexia, Texas.  The Partnership secured the loan under the Rural Development Housing Loan Program of FmHA (now Rural Housing Service ("RHS")).  Dr. Williams signed each loan document as a partner of the Partnership.[2]  He was at the time a resident of Mexia.  He moved to the Dallas metroplex in 1977 and does not believe he has seen Hillside since.  Dr. Williams was not involved in the day-to-day management of the property.

In the spring of 1987 Dr. Williams was involved in real estate ventures in the Dallas area that were going badly and necessitated that he file for bankruptcy.  The Partnership debt to USDA, however, was fully secured by the deed of trust on Hillside, and the loan was not in default.  Dr. Williams also had a substance abuse problem with prescription medications for which he was treated as a rehabilitation inpatient during a four-week period in April.  During this period he had very little contact with the

_____

[2]He also signed as "Attorney in Fact" for another partner. *See, e.g.,* GX 2.

- 2 -

outside world, including with his bankruptcy counsel.[3]   He delegated to his secretary and office staff the responsibility of providing information to his counsel concerning the identity of his creditors and his assets.

On May 20, 1987 Dr. Williams and his wife filed a chapter 7 petition.  None of the original or amended schedules listed USDA, FmHA, or RHS as a creditor, and none of these entities received notice of the bankruptcy.  The Partnership was, however, listed as an asset.  Dr. Williams and his wife filed an Amended Schedule A-3 in November 1987 that added a substantial number of creditors to those listed originally.  During 1987, when he was dealing with his counsel and the bankruptcy trustee, the subject of the Hillside debt never came up.  Dr. Williams did not intentionally omit the Hillside debt from his schedules.  His failure to list the debt was a mistake, and he had nothing to gain from not listing the debt.

Dr. Williams' bankruptcy case was treated as a no-asset case, and on November 20, 1987 Dr. Williams and his wife received a discharge.  The estate was closed on April 27, 1992.

In 1997 USDA notified Dr. Williams in a series of three servicing letters that the Partnership needed to take corrective actions or the debt would be accelerated.  Dr. Williams responded

---

[3]Dr. Williams' counsel later advised him that he had a conflict, and he withdrew.  That attorney is now deceased.  Another attorney (the one who represented him during this trial) replaced him.

by letter that he had relinquished his Partnership interest in 1987. He did not explicitly mention his bankruptcy. USDA never released Dr. Williams from his obligations under the documents that the Partnership executed to obtain the Hillside loan.

In December 1997 the debt was accelerated, and in August 1998 USDA purchased at foreclosure the real property that secured the note. After crediting the proceeds of the sale against the Partnership debt, a deficiency of $144,183.17 remained. The government asserts that Dr. Williams' indebtedness was $224,315.93 as of June 1, 2005 and is accruing daily interest of $32.54. USDA demanded payment from Dr. Williams to satisfy the deficiency in accordance with his personal liability for the debts and the Partnership obligations. Although the evidence shows that Dr. Williams is presently able to pay the deficiency, he has not done so, contending that his personal liability for the debts of the Partnership was discharged in bankruptcy.

II

Because Dr. Williams relies on the affirmative defense of discharge in bankruptcy, he bears the burden of proof. *See*, *e.g., United States v. Union Scrap Iron & Metal,* 123 B.R. 831, 835 n.4 (D. Minn. 1990) (citing Fed. R. Civ. P. 8(c)). This case presents two controlling issues: (1) Did USDA have a "claim" under the Bankruptcy Code against Dr. Williams before he filed for bankruptcy in 1987? (2) If so, did his failure to schedule USDA as a creditor

preclude discharge of the claim?[4]

III

The court first considers whether USDA had a claim under the Bankruptcy Code against Dr. Williams before he filed for bankruptcy.

A

Dr. Williams contends that his personal liability for the debts of the Partnership was discharged by his bankruptcy despite the fact that he never scheduled USDA as a creditor.  He argues that USDA had an unmatured, contingent claim that arose before he filed his bankruptcy petition.  The government posits that Dr. Williams did not have a personal debt to USDA in 1987.  It reasons that there was no enforceable claim against either the Partnership or Dr. Williams because the Partnership was performing in accordance with its financial and regulatory obligations.  The government contends that it was only when the Partnership defaulted on the loan in 1997 that an enforceable claim arose.  Under its interpretation of the Bankruptcy Code and Texas state law, there was no enforceable claim on May 20, 1987, the petition date, because there was no right of payment.  The government maintains that all of the elements of USDA's claim against Dr. Williams or

_____

[4]At trial, Dr. Williams sought by amendment to raise the issue that USDA is an oversecured creditor and there is no deficiency. This issue was not included in the pretrial order, and the court declines to consider it.

the Partnership did not arise until December 1997, when the Partnership defaulted on the loan.  Therefore, any right to payment arose post-petition, and Dr. Williams is still personally liable for the deficiency resulting from USDA's foreclosure on Hillside in 1998.

B

"Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . whether or not a proof of claim based on any such debt or liability is filed. . . ."  11 U.S.C. § 727(b).  A "debt" is defined as "liability on a claim."  11 U.S.C. § 101(12).  The definition of a "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"  11 U.S.C. § 101(5)(A).  "A claim is contingent as to liability if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event and such future occurrence was within the actual or presumed contemplation of the parties at the time the original relationship of the parties was created."  *In re All Media Props., Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980), *aff'd on basis of bankruptcy court opinion*, 646 F.2d 193 (5th Cir. Unit A May 1981) (per curiam); *see also In re Ford*, 967 F.2d 1047, 1051 (5th Cir.

- 6 -

1992).  Congress intended the term "claim" to be read broadly so that "all legal obligations of the debtor, no matter how remote or contingent[,] will be able to be dealt with in the bankruptcy case." *In re Nat'l Gypsum Co.,* 139 B.R. 397, 405 (N.D. Tex. 1992) (Sanders, C.J.) (quoting H.R. Rep. No. 595, at 22 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808)).  Courts have accordingly interpreted the term "claim" expansively.  *Id.* (citing *Ohio v. Kovacs,* 469 U.S. 274, 279 (1985) ("[I]t is apparent that Congress desired a broad definition of a 'claim'[.]")).

Whether a claim exists depends on the interests created by non-bankruptcy substantive law.  *Id.*  "A claim exists only if before filing of the bankruptcy petition, the relationship between the debtor and the creditor contained all the elements necessary to give rise to a legal obligation—'a right to payment'—under the relevant non-bankruptcy law." *Id.; see also Carrieri v. Jobs.com, Inc.,* 393 F.3d 508, 524 & 525 n.17 (5th Cir. 2004) (holding that "[t]he touchstone of any 'claim' is that there is an 'enforceable obligation' of the debtor or an enforceable 'right to payment' from the debtor[,]" and that "a 'right to payment' . . . is established by demonstrating 'a legal entitlement to payments of money from the debtor at specified intervals [or a specified time or event].'") (brackets in original) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991), and quoting *In re Sid Bernstein, Ltd.*, 1996 WL 183375, at *7 (Bankr. E.D. Pa. Mar. 19, 1996)).  A creditor "need

not have a cause of action that is ripe for suit outside of bankruptcy in order for it to have a pre-petition claim for purposes of the Code." *Nat'l Gypsum,* 139 B.R. at 405.

Although "non-bankruptcy law governs the *existence* of a claim under the Code, it is not dispositive of the *time* at which a claim arises under the Code." *Id.; see also In re Andrews,* 239 F.3d 708, 710 n.8 (5th Cir. 2001) ("'federal law determines when [a] claim arises for bankruptcy purposes'") (quoting *In re Hassanally,* 208 B.R. 46, 50 (Bankr. 9th Cir. 1997)). "If a right to payment becomes vested prior to commencement of the bankruptcy case, the claim becomes a pre-petition claim. A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition." *In re Oxford Mgmt., Inc.,* 4 F.3d 1329, 1335 n.7 (5th Cir. 1993); *see also Braniff Airways, Inc. v. Exxon, Co., U.S.A.,* 814 F.2d 1030, 1036 (5th Cir. 1987) ("The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor's petition is filed.") (quoting *In re Morristown Lincoln-Mercury, Inc.,* 42 B.R. 413, 418-19 (Bankr. E.D. Tenn. 1984)).

C

Before the date Dr. Williams filed for bankruptcy, the Partnership was indebted to USDA on the Hillside loan. As a general partner in the Partnership, Dr. Williams was also indebted

to USDA.  Under Texas law, "[i]n a general partnership, a partner
is liable for partnership debts jointly and severally with all
other partners."  *U.S. Rest. Props. Operating L.P. v. Motel
Enters., Inc.*, 104 S.W.3d 284, 293 (Tex. App. 2003, pet. denied);
*see Commons W. Office Condos, Ltd. v. Resolution Trust Corp.*, 5
F.3d 125, 127 (5th Cir. 1993) (Texas law); Tex. Rev. Civ. Stat.
Ann. art. 6132b-3.04 (Vernon Supp. 2004-05).[5]  Under the Texas
Uniform Partnership Act, which governed in 1975 and 1987, Dr.
Williams was jointly and severally liable for the Partnership debt
to USDA, and USDA had a direct action against him for enforcement
of this obligation, without the necessity that it first proceed
against the Partnership.  *See Foster v. Daon Corp.*, 713 F.2d 148,
151 (5th Cir. 1983) (applying now-repealed Texas Uniform
Partnership Act).[6]

---

[5]Although article 6132b-3.04 is a provision of the Texas
Revised Partnership Act, adopted in 1993, the Bar Committee comment
indicates that it continues the rule of § 15 of the Texas Uniform
Partnership Act, which provided "that all partners are liable
jointly and severally for all debts and obligations of the
partnership, unless the claimant agrees otherwise or other law
provides a limitation on liability."  Tex. Rev. Civ. Stat. Ann.
art. 6132b-3.04 cmt. (Vernon Supp. 2004-05).

[6]In closing argument, the government asserted that, assuming
there was a breach of the loan agreement in 1987, it and USDA would
have been obligated to comply with Tex. Rev. Civ. Stat. art.
6132b-3.05(d) (Vernon Supp. 2004-05), and obtain a judgment against
the Partnership.  It reasons that it could not have done so,
because the Partnership was in compliance with its debt.  Article
6132b-3.05(d), however, is a provision of the Texas Revised
Partnership Act, which took effect in 1993.  The government has not
established that it would have faced a similar impediment in 1987,
and the Bar Committee comment to article 6132b-3.05(d) suggests

Even if Dr. Williams' indebtedness to USDA is considered unmatured and/or contingent before he filed for bankruptcy (because the Partnership was not then in default), USDA still had a "claim" against him within the meaning of § 101(5). *See, e.g., In re Loewen Group Int'l, Inc.*, 274 B.R. 427, 438-439 (Bankr. D. Del. 2002) (noting that § 101(5)'s definition of "claim" permits creditor to assert claim against debtor for all amounts owed to him as of petition date, even if such amounts are unmatured, and holding that claimants were permitted to assert claims in an amount equal to entire unpaid principal balance of promissory notes pursuant to § 101(5)); *In re Caldor, Inc.-NY*, 240 B.R. 180, 194 (Bankr. S.D.N.Y. 1999) (holding in context of breach of contract that right to payment need not be presently enforceable to qualify as a claim under § 101(5) and that claim arose before debtor breached contract); *In re Manville Forest Prods. Corp.*, 225 B.R. 862, 866 (Bankr. S.D.N.Y. 1998)("Because contingent and unmatured rights of payment are 'claims' under the Code, it is possible that a right to payment that is not yet enforceable at the time of the filing of the petition under non-bankruptcy law, may be defined as a claim within section 101(5)(A) of the Code.").

Accordingly, before the May 20, 1987 petition date, USDA had a claim against Dr. Williams under § 101(5) of the Code that was

---

that it would not have. *See* Tex. Rev. Civ. Stat. Ann. art. 6132b-3.05 cmt. (Vernon Supp. 2004-05).

dischargeable in bankruptcy.

IV

The court next addresses whether Dr. Williams' failure to schedule USDA as a creditor precludes discharge of the claim.

A

In a chapter 7 bankruptcy proceeding, subject to certain exceptions, a debtor is discharged from all his debts arising prior to the date of his order for relief. *See* 11 U.S.C. § 727(b). One exception disallows the discharge of debts the debtor failed to list or schedule. *See* 11 U.S.C. § 523(a)(3). *Robinson v. Mann*, 339 F.2d 547 (5th Cir. 1964), sets out three factors to "consider in determining whether a debtor's failure to list a creditor will prevent discharge of the unscheduled debt." *In re Stone*, 10 F.3d 285, 290 (5th Cir. 1994). The court examines "1) the reasons the debtor failed to list the creditor, 2) the amount of disruption which would likely occur, and 3) any prejudice suffered by the listed creditors and the unlisted creditor in question." *Id.; In re Faden*, 96 F.3d 792, 796 (5th Cir. 1996) (same). Dr. Williams bears the burden of proving under these factors that his debt should be discharged despite his failure to list USDA as a creditor.

- 11 -

B

In applying the first factor, "a court should not discharge a debt under section 523(a)(3) if the debtor's failure to schedule that debt was due to intentional design, fraud, or improper motive." *Stone*, 10 F.3d at 291.  "If the failure is attributable solely to negligence or inadvertence, however, equity points toward discharge of the debt." *Id.*  "[A] deficiency under [the] first factor alone permits a court in the exercise of its sound discretion to deny relief." *Faden*, 96 F.3d at 797 (upholding a bankruptcy court's decision not to discharge a debt because, "even absent prejudice, equitable action should not be taken in cases where the debtor's failure to properly schedule a creditor is a result of more than 'mere negligence or inadvertence'").

Dr. Williams testified credibly that he did not intentionally omit the Hillside debt from his schedules and that his failure to list the debt was a mistake.  The evidence concerning his personal problems, the delegation of responsibility to his staff for providing information to his bankruptcy counsel, his lack of contact with Hillside, the nature and extent of the disclosures he made in his original and amended schedules, and the lack of any obvious gain from failing to list USDA as a creditor (compared with the gain to be derived from unmistakably discharging the debt) corroborates his testimony.  Moreover, the fact that he may only have omitted one creditor from the list tends to support the

finding that the omission was a mistake.[7]  Thus resolution of the first factor weighs in favor of an equitable discharge of Dr. Williams' debt.

C

"The second factor focuses on undue disruption to courts' dockets." *Stone*, 10 F.3d at 291.  In *Stone* the court found that, while some disruption may exist in "allowing debtors to amend their schedules and creditors to submit proofs of claims outside the Rule 3002(c) time period, such disruption is not so inordinate as to tip the scales against discharging the debt."  *Id.; see also In re Madaj*, 149 F.3d 467, 472 (6th Cir. 1998) (holding that reopening chapter 7 no-asset case to schedule omitted, dischargeable debt had no effect on bankruptcy proceedings).  In *American Chiropractic Clinic-North Dallas, P. C. v. Rodriguez*, 2002 WL 1782376 (N. D. Tex. Aug. 1, 2002) (Solis, J.), the court held that, because the case was a no-asset proceeding, "creditors were advised not to file proofs of claim" and there could be no administrative disruption. *Id.* at *4.

In the present case, there is no indication that there will be a disruption to court dockets.  This is likely because there is no

---

[7]*Cf. In re Smith*, 21 F.3d 660, 664 (5th Cir. 1994)(holding that debt was not dischargeable where, "[c]oupled with the fact that the debtors apparently failed properly to schedule a number of other creditors for several years, their error with regard to [this creditor could] hardly be termed mere negligence or inadvertence.").

suggestion that Dr. Williams will attempt to reopen his bankruptcy. He intends to do no more than rely on the affirmative defense of discharge in bankruptcy to avoid liability to the government in this lawsuit. This factor favors discharging Dr. Williams' debt. *See Stone*, 10 F.3d at 291 (holding that second factor favored discharge where there was no indication that discharge could or would unduly disrupt the courts).

D

"Without question, the third factor, which focu[s]es on prejudice to the creditors——in conjunction with the first factor——is the most critical. Creditors are prejudiced only if their rights to receive their share of dividends and obtain dischargeability determinations are compromised." *Stone*, 10 F.3d at 291 (footnote omitted) (citing cases). In *Stone* the court found that "[b]ecause this is a no-asset case no creditor will receive any dividends," and "the [creditors'] rights to participate in dividends would not be any different had they been listed *first* on the [debtors'] schedules." *Id.* at 291-92 (discharging the debts); *see also Am. Chiropractic Clinic*, 2002 WL 1782376, at *4 (holding creditor was not prejudiced because "this was a no-asset case").

The court holds that Dr. Williams has proved that the government was not prejudiced by his failure to list the USDA debt. Even if USDA had been notified of the bankruptcy, Dr. Williams' indebtedness would have been discharged, and USDA would have

received nothing from him personally.[8]  Thus the court finds that
USDA did not suffer prejudice from its lack of notice.  *See Am.
Chiropractic Clinic*, 2002 WL 1782376, at *4.[9]

                              *      *      *

        USDA had an unmatured, contingent claim against Dr. Williams
at the time he filed for bankruptcy.  After applying the three
factors to determine whether Dr. Williams' debt was discharged
despite his failure to list USDA as a creditor in his bankruptcy,
the court finds that § 523(a)(3) is inapplicable.  Dr. Williams
inadvertently omitted USDA from his list of creditors, no court's
docket will be unduly disrupted by allowing Dr. Williams to
discharge his debt, and USDA did not suffer prejudice by the
discharge of the debt.  Because Dr. Williams proved that his debt

─────────────

        [8]The court need not decide how USDA would have been treated in
the bankruptcy as a secured creditor had it participated.  There is
no dispute that, if USDA had a "claim" under the Code, Dr.
Williams' personal indebtedness was discharged, and that it would
have received nothing from him personally.  Accordingly, Dr.
Williams has established that USDA was not prejudiced.

        [9]The government referred during closing argument to prejudice
in the form of an inability to address the viability of the
Partnership itself.  The court is not persuaded that this
circumstance undercuts Dr. Williams' proof that USDA was not
prejudiced in the case of this no-asset bankruptcy.

to USDA was discharged in bankruptcy, the government is not entitled to recover relief in this case, and this action is dismissed with prejudice by judgment filed today.

August 3, 2005.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 16 -